# FELTNER *v.* COLUMBIA PICTURES TELEVISION, INC.

No. 96–1768.   Argued January 21, 1998—Decided March 31, 1998

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined.   SCALIA, J., filed an opinion concurring in the judgment, *post*, p. 355.

*John G. Roberts, Jr.*, argued the cause for petitioner. With him on the briefs were *David G. Leitch* and *Jonathan S. Franklin.*

*Henry J. Tashman* argued the cause for respondent. With him on the brief was *Gregory J. Kopta.**

JUSTICE THOMAS delivered the opinion of the Court.

Section 504(c) of the Copyright Act of 1976 permits a copyright owner "to recover, instead of actual damages and profits, an award of statutory damages . . . , in a sum of not less than $500 or more than $20,000 as the court considers just." 90 Stat. 2585, as amended, 17 U. S. C. § 504(c)(1). In this case, we consider whether § 504(c) or the Seventh Amendment grants a right to a jury trial when a copyright owner elects to recover statutory damages. We hold that although the statute is silent on the point, the Seventh Amendment provides a right to a jury trial, which includes a right to a jury determination of the amount of statutory damages. We therefore reverse.

## I

Petitioner C. Elvin Feltner owns Krypton International Corporation, which in 1990 acquired three television stations in the southeastern United States. Respondent Columbia Pictures Television, Inc., had licensed several television series to these stations, including "Who's the Boss," "Silver Spoons," "Hart to Hart," and "T. J. Hooker." After the stations became delinquent in making their royalty payments to Columbia, Krypton and Columbia entered into negotiations to restructure the stations' debt. These discussions were unavailing, and Columbia terminated the stations' li-

---

*Howard B. Abrams, pro se,* filed a brief as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Society of Composers, Authors and Publishers by *I. Fred Koenigsberg* and *Philip H. Schaeffer;* for the International Anticounterfeiting Coalition, Inc., by *Peter W. James, Anthony M. Keats,* and *Larry W. McFarland;* and for the National Football League et al. by *Neil K. Roman* and *Robert A. Long, Jr.*

cense agreements in October 1991. Despite Columbia's termination, the stations continued broadcasting the programs.

Columbia sued Feltner, Krypton, the stations, various Krypton subsidiaries, and certain Krypton officers in Federal District Court alleging, *inter alia*, copyright infringement arising from the stations' unauthorized broadcasting of the programs. Columbia sought various forms of relief under the Copyright Act of 1976 (Copyright Act), 17 U. S. C. § 101 *et seq.*, including a permanent injunction, § 502; impoundment of all copies of the programs, § 503; actual damages or, in the alternative, statutory damages, § 504; and costs and attorney's fees, § 505. On Columbia's motion, the District Court entered partial summary judgment as to liability for Columbia on its copyright infringement claims.[1]

Columbia exercised the option afforded by § 504(c) of the Copyright Act to recover "Statutory Damages" in lieu of actual damages. In relevant part, § 504(c) provides:

> "STATUTORY DAMAGES—
>
> "(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, . . . in a sum of not less than $500 or more than $20,000 as the court considers just. . . .
>
> "(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $100,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of

---

[1] During the course of the litigation, Columbia dropped all claims against all parties except its copyright claims against Feltner.

copyright, the court [in] its discretion may reduce the award of statutory damages to a sum of not less than $200. . . ."   17 U. S. C. § 504(c).

The District Court denied Feltner's request for a jury trial on statutory damages, ruling instead that such issues would be determined at a bench trial.   After two days of trial, the trial judge held that each episode of each series constituted a separate work and that the airing of the same episode by different stations controlled by Feltner constituted separate violations; accordingly, the trial judge determined that there had been a total of 440 acts of infringement.   The trial judge further found that Feltner's infringement was willful and fixed statutory damages at $20,000 per act of infringement. Applying that amount to the number of acts of infringement, the trial judge determined that Columbia was entitled to $8,800,000 in statutory damages, plus costs and attorney's fees.

The Court of Appeals for the Ninth Circuit affirmed in all relevant respects.   *Columbia Pictures Television* v. *Krypton Broadcasting of Birmingham, Inc.*, 106 F. 3d 284 (1997).[2] Most importantly for present purposes, the court rejected Feltner's argument that he was entitled to have a jury determine statutory damages.   Relying on *Sid & Marty Krofft Television Productions, Inc.* v. *McDonald's Corp.*, 562 F. 2d 1157 (CA9 1977)—which held that § 25(b) of the Copyright Act of 1909, the statutory predecessor of § 504(c), required the trial judge to assess statutory damages[3]—the Court of

---

[2] The Court of Appeals vacated and remanded (for further explanation) the District Court's award of costs and attorney's fees to Columbia.   See 106 F. 3d, at 296.

[3] Under the 1909 Act, a copyright plaintiff could recover, "in lieu of actual damages and profits, such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated, but in the case of a newspaper reproduction of a copyrighted photograph[,] such damages shall not exceed the sum of [$200] nor be less than the sum of [$50], and such damages shall in

Appeals held that § 504(c) does not grant a right to a jury determination of statutory damages. The court reasoned that "[i]f Congress intended to overrule *Krofft* by having the jury determine the proper award of statutory damages, it would have altered" the language "as the court considers just" in § 504(c). 106 F. 3d, at 293. The Court of Appeals further concluded that the "Seventh Amendment does not provide a right to a jury trial on the issue of statutory damages because an award of such damages is equitable in nature." *Ibid.* We granted certiorari. 521 U. S. 1151 (1997).·

## II

Before inquiring into the applicability of the Seventh Amendment, we must "'first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *Tull* v. *United States*, 481 U. S. 412, 417, n. 3 (1987) (quoting *Curtis* v. *Loether*, 415 U. S. 189, 192, n. 6 (1974)). Such a construction is not possible here, for we cannot discern "any congressional intent to grant . . . the right to a jury trial," 481 U. S., at 417, n. 3, on an award of statutory damages.[4]

The language of § 504(c) does not grant a right to have a jury assess statutory damages. Statutory damages are to be assessed in an amount that "the court considers just." § 504(c)(1). Further, in the event that "the court finds" the infringement was willful or innocent, "the court in its discretion" may, within limits, increase or decrease the amount of

no other case exceed the sum of [$5,000] nor be less than the sum of [$250] . . ." Act of Mar. 4, 1909, § 25(b), 35 Stat. 1081 (later amended and codified at 17 U. S. C. § 101(b)).

[4] The Courts of Appeals have unanimously held that § 504(c) is not susceptible of an interpretation that would avoid the Seventh Amendment question. See, *e. g., Cass County Music Co.* v. *C. H. L. R., Inc.*, 88 F. 3d 635, 641 (CA8 1996); *Video Views, Inc.* v. *Studio 21, Ltd.*, 925 F. 2d 1010, 1014 (CA7 1991); *Gnossos Music* v. *Mitken Inc.*, 653 F. 2d 117, 119 (CA4 1981); see also *Oboler* v. *Goldin*, 714 F. 2d 211, 213 (CA2 1983); 4 M. Nimmer & D. Nimmer, Nimmer on Copyright § 14.04[C] (1997).

statutory damages. § 504(c)(2). These phrases, like the entire statutory provision, make no mention of a right to a jury trial or, for that matter, to juries at all.

The word "court" in this context appears to mean judge, not jury. Cf. *F. W. Woolworth Co.* v. *Contemporary Arts, Inc.*, 344 U. S. 228, 232 (1952) (referring to the "*judicial* discretion" necessary for "the court's choice between a computed measure of damage and that imputed by" the Copyright Act of 1909 (emphasis added)). In fact, the other remedies provisions of the Copyright Act use the term "court" in contexts generally thought to confer authority on a judge, rather than a jury. See, *e. g.*, § 502 ("court . . . may . . . grant temporary and final injunctions"); § 503(a) ("[T]he court may order the impounding . . . of all copies or phonorecords"); § 503(b) ("As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords"); § 505 ("[T]he court in its discretion may allow the recovery of full costs" of litigation, and "the court may also award a reasonable attorney's fee"). In contrast, the Copyright Act does not use the term "court" in the subsection addressing awards of actual damages and profits, see § 504(b), which generally are thought to constitute legal relief. See *Dairy Queen, Inc.* v. *Wood*, 369 U. S. 469, 477 (1962) (action for damages for trademark infringement "subject to cognizance by a court of law"); see also *Arnstein* v. *Porter*, 154 F. 2d 464, 468 (CA2 1946) (copyright action for damages is "triable at 'law' and by a jury as of right"); *Video Views, Inc.* v. *Studio 21, Ltd.*, 925 F. 2d 1010, 1014 (CA7 1991) ("little question that the right to a jury trial exists in a copyright infringement action when the copyright owner endeavors to prove and recover its *actual* damages"); 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 12.10[B] (1997) ("beyond dispute that a plaintiff who seeks to recover actual damages is entitled to a jury trial" (footnotes omitted)).

Feltner relies on *Lorillard* v. *Pons*, 434 U. S. 575, 585 (1978), in which we held that the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, 29 U. S. C. § 621 *et seq.*, provides a statutory right to a jury trial in an action for unpaid wages even though the statute authorizes "the court . . . to grant such legal or equitable relief as may be appropriate," § 626(b). That holding, however, turned on two crucial factors: The ADEA's remedial provisions were expressly to be enforced in accordance with the Fair Labor Standards Act of 1938, as amended, 29 U. S. C. § 101 *et seq.*, which had been uniformly interpreted to provide a right to a jury trial, *Lorillard* v. *Pons*, 434 U. S., at 580–581; and the statute used the word "legal," which we found to be a "term of art" used in cases "in which legal relief is available and legal rights are determined" by juries, *id.*, at 583. Section 504(c), in contrast, does not make explicit reference to another statute that has been uniformly interpreted to provide a right to jury trial and does not use the word "legal" or other language denoting legal relief or rights.[5]

We thus discern no statutory right to a jury trial when a copyright owner elects to recover statutory damages. Accordingly, we must reach the constitutional question.

## III.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ." U. S. Const., Amdt. 7. Since Justice Story's time, the Court

---

[5] In addition, a copyright plaintiff may elect statutory damages "at any time before final judgment is rendered." § 504(c)(1). The parties agree, and we have found no indication to the contrary, that election may occur even after a jury has returned a verdict on liability and an award of actual damages. It is at least unlikely that Congress intended that a jury, having already made a determination of actual damages, should be reconvened to make a determination of statutory damages.

has understood "Suits at common law" to refer "not merely [to] suits, which the *common* law recognized among its old and settled proceedings, but [to] suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Parsons* v. *Bedford*, 3 Pet. 433, 447 (1830) (emphasis in original). The Seventh Amendment thus applies not only to common-law causes of action, but also to "actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Granfinanciera, S. A.* v. *Nordberg*, 492 U. S. 33, 42 (1989) (citing *Curtis* v. *Loether*, 415 U. S., at 193). To determine whether a statutory action is more analogous to cases tried in courts of law than to suits tried in courts of equity or admiralty, we examine both the nature of the statutory action and the remedy sought. See 492 U. S., at 42.

Unlike many of our recent Seventh Amendment cases, which have involved modern statutory rights unknown to 18th-century England, see, *e. g.*, *Wooddell* v. *Electrical Workers*, 502 U. S. 93 (1991) (alleged violations of union's duties under Labor Management Relations Act, 1947, and Labor-Management Reporting and Disclosure Act of 1959); *Granfinanciera* v. *Nordberg, supra* (action to rescind fraudulent preference under Bankruptcy Act); *Tull* v. *United States*, 481 U. S. 412 (1987) (Government's claim for civil penalties under Clean Water Act); *Curtis* v. *Loether, supra* (claim under Title VIII of Civil Rights Act of 1968), in this case there are close analogues to actions seeking statutory damages under § 504(c). Before the adoption of the Seventh Amendment, the common law and statutes in England and this country granted copyright owners causes of action for infringement. More importantly, copyright suits for mone-

tary damages were tried in courts of law, and thus before juries.

By the middle of the 17th century, the common law recognized an author's right to prevent the unauthorized publication of his manuscript. See, *e. g., Stationers Co.* v. *Patentees,* Carter's Rep. 89, 124 Eng. Rep. 842 (C. P. 1666). This protection derived from the principle that the manuscript was the product of intellectual labor and was as much the author's property as the material on which it was written. See *Millar* v. *Taylor,* 4 Burr. 2303, 2398, 98 Eng. Rep. 201, 252 (K. B. 1769) (opinion of Mansfield, C. J.) (common-law copyright derived from principle that "it is just, that an Author should reap the pecuniary Profits of his own ingenuity and Labour"); 1 W. Patry, Copyright Law and Practice 3 (1994). Actions seeking damages for infringement of common-law copyright, like actions seeking damages for invasions of other property rights, were tried in courts of law in actions on the case. See *Millar* v. *Taylor, supra,* at 2396–2397, 98 Eng. Rep., at 251. Actions on the case, like other actions at law, were tried before juries. See *McClenachan* v. *McCarty,* 1 Dall. 375, 378 (C. P. Phila. Cty. 1788); 5 J. Moore, Moore's Federal Practice ¶38.11[5] (2d ed. 1996); 1 J. Chitty, Treatise on Pleading and Parties to Actions 164 (1892).

In 1710, the first English copyright statute, the Statute of Anne, was enacted to protect published books. 8 Anne ch. 19 (1710). Under the Statute of Anne, damages for infringement were set at "one Penny for every Sheet which shall be found in [the infringer's] custody, either printed or printing, published, or exposed to Sale," half ("one Moiety") to go to the Crown and half to the copyright owner, and were "to be recovered . . . by Action of Debt, Bill, Plaint, or Information." § 1. Like the earlier practice with regard to common-law copyright claims for damages, actions seeking damages under the Statute of Anne were tried in courts of law. See

*Beckford* v. *Hood*, 7 T. R. 621, 627, 101 Eng. Rep. 1164, 1167 (K. B. 1798) (opinion of Kenyon, C. J.) ("[T]he statute having vested that right in the author, the common law gives the remedy by action on the case for the violation of it").

The practice of trying copyright damages actions at law before juries was followed in this country, where statutory copyright protections were enacted even before adoption of the Constitution. In 1783, the Continental Congress passed a resolution recommending that the States secure copyright protections for authors. See U. S. Copyright Office, Copyright Enactments: Laws Passed in the United States Since 1783 Relating to Copyright, Bulletin No. 3, p. 1 (rev. ed. 1963) (hereinafter Copyright Enactments). Twelve States (all except Delaware) responded by enacting copyright statutes, each of which provided a cause of action for damages, and none of which made any reference to equity jurisdiction. At least three of these state statutes expressly stated that damages were to be recovered through actions at law, see *id.*, at 2 (in Connecticut, damages for double the value of the infringed copy "to be recovered . . . in any court of law in this State"); *id.*, at 17 (in Georgia, similar damages enforceable "in due course of law"); *id.*, at 19 (in New York, similar damages enforceable in "any court of law"), while four others provided that damages would be recovered in an "action of debt," a prototypical action brought in a court of law before a jury. See F. Maitland, Forms of Action at Common Law 357 (1929) (hereinafter Maitland); see Copyright Enactments 4–9 (in Massachusetts, New Hampshire, and Rhode Island, damages enforceable by "action of debt"); *id.*, at 12 (in South Carolina, damages of one shilling per sheet enforceable by "debt, bill, plaint or information"). Although these statutes were short-lived, and hence few courts had occasion to interpret them, the available evidence suggests that the practice was for copyright actions seeking damages to be tried to a jury. See *Hudson & Goodwin* v. *Patten*, 1 Root 133, 134

(Conn. Super. Ct. 1789) (jury awarded copyright owner £100 under Connecticut copyright statute).

Moreover, three of the state statutes specifically authorized an award of damages from a statutory range, just as § 504(c) does today.  See Copyright Enactments 4 (in Massachusetts, damages of not less than £5 and not more than £3,000); *id.*, at 8 (in New Hampshire, damages of not less than £5 and not more than £1,000); *id.*, at 9 (in Rhode Island, damages of not less than £5 and not more than £3,000).  Although we have found no direct evidence of the practice under these statutes, there is no reason to suppose that such actions were intended to deviate from the traditional practice: The damages were to be recovered by an "action of debt," see *id.*, at 4–9, which was an action at law, see Maitland 357.

In 1790, Congress passed the first federal copyright statute, the Copyright Act of 1790, which similarly authorized the awarding of damages for copyright infringements.  Act of May 31, 1790, ch. 15, §§ 2, 6, 1 Stat. 124, 125.  The Copyright Act of 1790 provided that damages for copyright infringement of published works would be "the sum of fifty cents for every sheet which shall be found in [the infringer's] possession, . . . to be recovered by action of debt in any court of record in the United States, wherein the same is cognizable."  § 2.  Like the Statute of Anne, the Copyright Act of 1790 provided that half ("one moiety") of such damages were to go to the copyright owner and half to the United States.  For infringement of an unpublished manuscript, the statute entitled a copyright owner to "all damages occasioned by such injury, to be recovered by a special action on the case founded upon this act, in any court having cognizance thereof."  § 6.

There is no evidence that the Copyright Act of 1790 changed the practice of trying copyright actions for damages in courts of law before juries.  As we have noted, actions on the case and actions of debt were actions at law for which a

jury was required. See *supra*, at 349, 350.[6] Moreover, actions to recover damages under the Copyright Act of 1831—which differed from the Copyright Act of 1790 only in the amount (increased to $1 from 50 cents) authorized to be recovered for certain infringing sheets—were consistently tried to juries. See, *e. g.*, *Backus* v. *Gould*, 7 How. 798, 802 (1849) (jury awarded damages of $2,069.75); *Reed* v. *Carusi*, 20 F. Cas. 431, 432 (No. 11,642) (CC Md. 1845) (jury awarded damages of $200); *Millett* v. *Snowden*, 17 F. Cas. 374, 375 (No. 9,600) (SDNY 1844) (jury awarded damages of $625); *Dwight* v. *Appleton*, 8 F. Cas. 183, 185 (No. 4,215) (SDNY 1843) (jury awarded damages of $2,000).

Columbia does not dispute this historical evidence. In fact, Columbia makes no attempt to draw an analogy between an action for statutory damages under § 504(c) and *any* historical cause of action—including those actions for monetary relief that we have characterized as equitable, such as actions for disgorgement of improper profits. See *Teamsters* v. *Terry*, 494 U. S. 558, 570–571 (1990); *Tull* v. *United States*, 481 U. S., at 424. Rather, Columbia merely contends that statutory damages are clearly equitable in nature.

We are not persuaded. We have recognized the "general rule" that monetary relief is legal, *Teamsters* v. *Terry*, *supra*, at 570, and an award of statutory damages may serve purposes traditionally associated with legal relief, such as compensation and punishment. See *Curtis* v. *Loether*, 415 U. S., at 196 (actual damages are "traditional form of relief offered in the courts of law"); *Tull* v. *United States*, 481 U. S., at 422

---

[6] The Copyright Act of 1790 did not provide for equitable remedies at all, and in *Stevens* v. *Gladding*, 17 How. 447 (1855), we held that, even after Congress had provided for equity jurisdiction under the Copyright Act, see Act of Feb. 15, 1819, ch. 19, 3 Stat. 481, the statute's damages provision could not be enforced through a suit in equity. 17 How., at 455; see also *Callaghan* v. *Myers*, 128 U. S. 617, 663 (1888) (*Stevens* v. *Gladding* determined that "the penalties given by § 7 of the copyright act of 1831 cannot be enforced in a suit in equity").

("Remedies intended to punish culpable individuals . . . were issued by courts of law, not courts of equity"). Nor, as we have previously stated, is a monetary remedy rendered equitable simply because it is "not fixed or readily calculable from a fixed formula." *Id.*, at 422, n. 7. And there is historical evidence that cases involving discretionary monetary relief were tried before juries. See, *e. g.*, *Coryell* v. *Colbaugh*, 1 N. J. L. 77 (1791) (jury award of "exemplary damages" in an action on a promise of marriage). Accordingly, we must conclude that the Seventh Amendment provides a right to a jury trial where the copyright owner elects to recover statutory damages.

The right to a jury trial includes the right to have a jury determine the *amount* of statutory damages, if any, awarded to the copyright owner. It has long been recognized that "by the law the jury are judges of the damages." *Lord Townshend* v. *Hughes*, 2 Mod. 150, 151, 86 Eng. Rep. 994, 994–995 (C. P. 1677). Thus in *Dimick* v. *Schiedt*, 293 U. S. 474 (1935), the Court stated that "the common law rule as it existed at the time of the adoption of the Constitution" was that "in cases where the amount of damages was uncertain[,] their assessment was a matter so peculiarly within the province of the jury that the Court should not alter it." *Id.*, at 480 (internal quotation marks and citations omitted). And there is overwhelming evidence that the consistent practice at common law was for juries to award damages. See, *e. g.*, *Duke of York* v. *Pilkington*, 2 Show. 246, 89 Eng. Rep. 918 (K. B. 1760) (jury award of £100,000 in a slander action); *Wilkes* v. *Wood*, Lofft 1, 19, 98 Eng. Rep. 489, 499 (C. P. 1763) (jury award of £1,000 in an action of trespass); *Huckle* v. *Money*, 2 Wils. 205, 95 Eng. Rep. 768 (C. P. 1763) (upholding jury award of £300 in an action for trespass, assault and imprisonment); *Genay* v. *Norris*, 1 S. C. L. 6, 7 (1784) (jury award of £400); *Coryell* v. *Colbaugh, supra* (sustaining correctness of jury award of exemplary damages in an action on a promise of marriage); see also K. Redden, Punitive Dam-

ages § 2.2, p. 27 (1980) (describing "primacy of the jury in the awarding of damages").

More specifically, this was the consistent practice in copyright cases. In *Hudson & Goodwin* v. *Patten*, 1 Root, at 134, for example, a jury awarded a copyright owner £100 under the Connecticut copyright statute, which permitted damages in an amount double the value of the infringed copy. In addition, juries assessed the amount of damages under the Copyright Act of 1831, even though that statute, like the Copyright Act of 1790, fixed damages at a set amount per infringing sheet. See *Backus* v. *Gould, supra*, at 802 (jury awarded damages of $2,069.75); *Reed* v. *Carusi, supra*, at 432 (same, but $200); *Dwight* v. *Appleton, supra*, at 185 (same, but $2,000); *Millett* v. *Snowden, supra*, at 375 (same, but $625).

Relying on *Tull* v. *United States, supra*, Columbia contends that the Seventh Amendment does not provide a right to a jury determination of the amount of the award. In *Tull*, we held that the Seventh Amendment grants a right to a jury trial on all issues relating to liability for civil penalties under the Clean Water Act, 33 U. S. C. §§ 1251, 1319(d),[7] see 481 U. S., at 425, but then went on to decide that Congress could constitutionally authorize trial judges to assess the amount of the civil penalties, see *id.*, at 426–427.[8] According to Columbia, *Tull* demonstrates that a jury determination of the amount of statutory damages is not necessary "to preserve 'the substance of the common-law right of trial by jury.'" *Id.*, at 426 (quoting *Colgrove* v. *Battin*, 413 U. S. 149, 157 (1973)).

---

[7] Section 1319(d) of the Clean Water Act provided that violators of certain sections of the Act "shall be subject to a civil penalty not to exceed $10,000 per day" during the period of the violation. 481 U. S., at 414.

[8] This portion of our opinion was arguably dicta, for our holding that there was a right to a jury trial on issues relating to liability required us to reverse the lower court's liability determination.

In *Tull*, however, we were presented with no evidence that juries historically had determined the amount of civil penalties to be paid to the Government.[9]   Moreover, the awarding of civil penalties to the Government could be viewed as analogous to sentencing in a criminal proceeding.   See 481 U. S., at 428 (SCALIA, J., concurring in part and dissenting in part).[10]   Here, of course, there is no similar analogy, and there is clear and direct historical evidence that juries, both as a general matter and in copyright cases, set the amount of damages awarded to a successful plaintiff.   *Tull* is thus inapposite.   As a result, if a party so demands, a jury must determine the actual amount of statutory damages under § 504(c) in order "to preserve 'the substance of the common-law right of trial by jury.'"   *Id.*, at 426.

\*   \*   \*

For the foregoing reasons, we hold that the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself.   The judgment below is reversed, and we remand the case for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, concurring in the judgment.

It is often enough that we must hold an enactment of Congress to be unconstitutional.   I see no reason to do so here—

---

[9] It should be noted that *Tull* is at least in tension with *Bank of Hamilton* v. *Lessee of Dudley*, 2 Pet. 492 (1829), in which the Court held in light of the Seventh Amendment that a jury must determine the amount of compensation for improvements to real estate, and with *Dimick* v. *Schiedt*, 293 U. S. 474 (1935), in which the Court held that the Seventh Amendment bars the use of additur.

[10] As we have noted, even under the Statute of Anne and the Copyright Act of 1790, the amount awarded to the Government ("one Moiety") was determined by a jury.

not because I believe that jury trial is not constitutionally required (I do not reach that issue), but because the statute can and therefore should be read to provide jury trial.

"[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *United States ex rel. Attorney General* v. *Delaware & Hudson Co.*, 213 U. S. 366, 408 (1909). The Copyright Act of 1976 authorizes statutory damages for copyright infringement "in a sum of not less than $500 or more than $20,000 as the court considers just." 17 U. S. C. § 504(c). The Court concludes that it is not "fairly possible," *ante*, at 345 (internal quotation marks omitted), to read § 504(c) as authorizing jury determination of the amount of those damages. I disagree.

In common legal parlance, the word "court" can mean "[t]he judge or judges, as distinguished from the counsel or jury." Webster's New International Dictionary 611 (2d ed. 1949) (def. 10d). But it also has a broader meaning, which includes both judge and jury. See, *e. g., ibid.* (def. 10b: "The persons duly assembled under authority of law for the administration of justice"); Black's Law Dictionary 318 (5th ed. 1979) (". . . A body organized to administer justice, and including both judge and jury"). We held in *Lorillard* v. *Pons*, 434 U. S. 575 (1978), that a statute authorizing "the court . . . to grant such legal or equitable relief as may be appropriate," 29 U. S. C. § 626(b), could fairly be read to afford a right to jury trial on claims for backpay under the Age Discrimination in Employment Act of 1967.

As the Court correctly observes, *ante*, at 347, there was more evidence in *Lorillard* than there is in the present case that "court" was being used to include the jury. The remedial provision at issue explicitly referred to the " 'powers, remedies, and *procedures*' " of the Fair Labor Standards Act, under which "it was well established that there was a right to a jury trial," *Lorillard*, 434 U. S., at 580. The provision's

reference to "legal . . . relief" also strongly suggested a statutory right to jury trial. *Id.*, at 583. The text of § 504(c) lacks such clear indications that "court" is being used in its broader sense. But their absence hardly demonstrates that the broader reading is not "fairly possible," *e. g.*, *Tull* v. *United States*, 481 U. S. 412, 417, n. 3 (1987). The only significant evidence cited by the Court for *that* proposition is that the "Copyright Act use[s] the term 'court' in contexts generally thought to confer authority on a judge, rather than a jury," *ante*, at 346, but "does not use the term 'court' in the subsection addressing awards of actual damages and profits, see § 504(b), which generally are thought to constitute legal relief," *ibid.* That is a fair observation, but it is not, in my view, probative enough to compel an interpretation that is constitutionally doubtful.

That is at least so in light of contradictory evidence from the statutory history, which the Court chooses to ignore. Section 504(c) is the direct descendant of a remedy created for unauthorized performance of dramatic compositions in an 1856 copyright statute. That statute provided for damages "not less than one hundred dollars for the first, and fifty dollars for every subsequent performance, as to the court having cognizance thereof shall appear to be just," enforced through an "action on the case or other equivalent remedy." Act of Aug. 18, 1856, ch. 169, 11 Stat. 138, 139. Because actions on the case were historically tried at law, it seems clear that this original statute permitted juries to assess such damages. See *Lorillard, supra*, at 583. Although subsequent revisions omitted the reference to "action[s] on the case," they carried forward the language specifying damages "as to the court shall appear to be just." See Act of July 8, 1870, ch. 230, § 101, 16 Stat. 214; Act of Jan. 6, 1897, ch. 4, 29 Stat. 482. In 1909, Congress extended those provisions to permit all copyright owners to recover "in lieu of actual damages and profits such damages as to the court shall appear just . . . ." Act of Mar. 4, 1909, ch. 320, § 25(b),

35 Stat. 1081. We have recognized that, although the prior statutory damages provisions

> "were broadened [in 1909] so as to include other copyrights and the limitations were changed in amount, . . . the principle on which they proceeded—that of committing the amount of damages to be recovered to the court's discretion and sense of justice, subject to prescribed limitations—was retained. The new provision, like one of the old, says the damages shall be such 'as to the court shall appear to be just.'" *L. A. Westermann Co.* v. *Dispatch Printing Co.,* 249 U. S. 100, 107 (1919).

If a right to jury trial was consistent with the meaning of the phrase "as to the court . . . shall appear to be just" in the 1856 statutory damages provision, I see no reason to insist that the phrase "as the court considers just" has a different meaning in that provision's latest reenactment. "[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lorillard, supra,* at 581.

I do not contend that reading "court" to include "jury" is necessarily the *best* interpretation of this statutory text. The Court is perhaps correct that the indications pointing to a change in meaning from the 1856 statute predominate. As I have written elsewhere, however:

> "The doctrine of constitutional doubt does not require that the problem-avoiding construction be the *preferable* one—the one the Court would adopt in any event. Such a standard would deprive the doctrine of all function. 'Adopt the interpretation that avoids the constitutional doubt if that is the right one' produces precisely the same result as 'adopt the right interpretation.' Rather, the doctrine of constitutional doubt comes into play when the statute is 'susceptible of' the problem-

avoiding interpretation, *Delaware & Hudson Co.*, 213 U. S., at 408—when that interpretation is *reasonable*, though not necessarily the best." *Almendarez-Torres* v. *United States, ante*, at 270 (dissenting opinion).

As the majority's discussion amply demonstrates, there would be considerable doubt about the constitutionality of § 504(c) if it did not permit jury determination of the amount of statutory damages. Because an interpretation of § 504(c) that avoids the Seventh Amendment question is at least "fairly possible," I would adopt that interpretation, prevent the invalidation of this statute, and reserve the constitutional issue for another day.