DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Akron Beacon Journal ("Beacon Journal"), appeals from a judgment of the Summit County Court of Common Pleas that awarded compensatory and punitive damages to appellees, Edward and Geneva Irvine, on their claims against Beacon Journal for invasion of privacy and for violations of the Telephone Consumer Protection Act. Beacon Journal also appeals from a post-judgment order that awarded attorney fees to the Irvines. The Irvines appeal from another order of the trial court that stayed the judgment but did not require Beacon Journal to post a bond. We affirm in part and reverse in part.
On October 5, 1999, the Irvines filed this action against Beacon Journal, one of its reporters, one of its photographers, and members of its editorial staff, alleging statutory and tort claims based upon alleged newsgathering and telemarketing activities by the defendants. The matter commenced to a jury trial. At the close of the defendants' case, the trial court directed a verdict for the individually-named defendants on the Irvines' telemarketing claims. The jury found for the defendants on the newsgathering claims. The jury found for each of the Irvines against the Beacon, however, on their claims for common law invasion of privacy and for violations of the Telephone Consumer Protection Act.
Based on its answers to special interrogatories, the jury indicated that Beacon Journal violated the Telephone Consumer Protection Act on three separate occasions when its autodialer called the Irvines' house between the restricted hours of 9:00 p.m. and 8:00 a.m. The jury awarded the Irvines $500 for each violation, for total statutory damages of $1500. The jury also found that the violations had been willful and awarded $4,500 in treble damages.
The jury also found that Beacon Journal's telemarketing practices had invaded the privacy of each of the Irvines. On these claims, the jury awarded each of the Irvines $250 in compensatory damages and $100,000 in punitive damages. The trial court entered judgment on the jury verdict.
Following a post-trial hearing before a magistrate, the Irvines were awarded $60,485.25 in attorney fees. The trial court adopted the magistrate's recommended award and overruled the objections raised by Beacon Journal.
Beacon Journal appeals from those two orders, raising fourteen assignments of error that will be rearranged and consolidated for ease of discussion. The Irvines also appeal from a later order of the trial court that stayed the Irvines' judgment against Beacon Journal but did not require Beacon Journal to post a bond. The appeals were consolidated and, though the appeals were from separate orders of the trial court, for briefing purposes, Beacon Journal was designated the appellant and the Irvines the cross-appellants. Consequently, Beacon Journal's assignments of error will be addressed first and then the Irvines' assignment of error, designated a cross-assignment of error, will be addressed.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY RETURNING THE JURY TO FURTHER DELIBERATIONS AND NOT ENTERING JUDGMENT IN FAVOR OF THE BEACON PURSUANT TO CIV.R. 49(B) AND/OR CORRECTING THE JURY'S VERDICT IN FORM, CONSISTENT WITH THE JURY'S INTERROGATORY ANSWER THAT THE BEACON DID NOT INVADE THE APPELLEES' PRIVACY IN REGARDS TO TELEPHONE HARASSMENT.
Beacon Journal contends that the trial court erred when, after the jury's initial deliberations, it failed to enter judgment on the jury's answers to special interrogatories that were inconsistent with the general verdict on the Irvines' invasion of privacy claim. Specifically, the jury initially returned with a general verdict for the Irvines on this claim, with an award of compensatory damages of $250 each and an award of punitive damages of $100,000 for each of the Irvines. The general verdict form was signed by six of the eight jurors. The jury's answers to three of the special interrogatories, however, were inconsistent with the general verdict. Through those interrogatories, the jurors indicated that Beacon Journal did not invade the privacy of either of the Irvines in regard to telephone harassment, nor did it act with actual malice.[1]
The trial court asked the jury to return for further deliberations but, when the jury returned, it had completed the three interrogatories just as it had done before, but had failed to complete any general verdict form on this claim. The trial court sent the jury back again for further deliberations. The jury returned with a general verdict for the Irvines, with the same damages as it had initially awarded, and with answers to the three interrogatories that were consistent with its general verdict.
Faced with an inconsistency between the general verdict and the answers to three of the interrogatories, there were three options available to the trial court:
 When one or more of the answers [to interrogatories] is inconsistent with the general verdict, [1] judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or [2] the court may return the jury for further consideration of its answers and verdict or [3] may order a new trial.
Civ.R. 49(B). It is within the sound discretion of the trial court to determine which of these three actions to take. Tasin v. SIFCOIndustries, Inc. (1990), 50 Ohio St.3d 102, paragraph one of the syllabus.
Beacon Journal contends that the trial court abused its discretion by failing to enter judgment for Beacon Journal, based on the original answers to special interrogatories, the first option listed in Civ.R. 49(B). Beacon Journal's argument suggests that the option of entering judgment on the answers to interrogatories is the preferred action that the trial court should take and that returning the jury for further deliberations is the action to be taken only in limited situations. On the contrary, the Ohio Supreme Court has often stated that the preferable option under Civ.R. 49(B) is to send the jury back for further deliberations. See, e.g., Perez v. Falls Financial, Inc. (2000),87 Ohio St.3d 371, 375-376; Shaffer v. Maier (1994), 68 Ohio St.3d 416,421-422. In fact, if there is any restraint on the trial court's discretion in this situation, it is when the court is permitted to enter judgment on the answers to special interrogatories that are inconsistent with the general verdict. See Otte v. Dayton Power Light Co. (1988),37 Ohio St.3d 33, 41. Beacon Journal has failed to demonstrate that the trial court abused its discretion by sending the jury back for further deliberations until it resolved the inconsistency between the general verdict and the special interrogatories.
Beacon Journal further contends that the trial court erred in its instructions to the jury when it sent the jury back for further deliberations. Although Beacon Journal raised an objection to the trial court sending the jury back for further deliberations, it raised no objection to the manner in which court instructed the jury. Consequently, it waived all but plain error. See Perez v. FallsFinancial, Inc., 87 Ohio St.3d at 375. Beacon Journal cites only two cases in support of its argument, one of which does not even address the issue and the other was reversed on this issue by the Ohio Supreme Court. Therefore, Beacon Journal has failed to demonstrate error, much less that this was one of those rare situations in which the plain error doctrine should be invoked. See Id. at 375-377. The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON INVASION OF PRIVACY BASED ON TELEPHONE HARASSMENT.
Through this assignment of error, Beacon Journal contends that the trial court erred in its jury instruction on the invasion of privacy claims. Although Beacon Journal raised several objections to the trial court's instruction on invasion of privacy, it has abandoned some of those arguments on appeal and has raised some new ones. "When a party fails to object to the giving of or failure to give a jury instruction before the jury retires to consider a verdict, the party may not assign as error the giving of or failure to give such instruction." Schade v.Carnegie Body Co. (1982), 70 Ohio St.2d 207, paragraph one of the syllabus. Consequently, this court will address only the argument that Beacon Journal preserved for appeal through a timely objection.
Beacon Journal asserts that the trial court erred by excluding from its instruction the language from Restatement of the Law 2d, Torts (1965) Section 652B, Comment d, that one, two, or even three telephone calls do not constitute an invasion of privacy. By excluding that language, Beacon Journal contends, the jury was misled to believe that two or three phone calls could constitute an invasion of privacy.
To demonstrate reversible error, Beacon Journal must demonstrate (1) that the trial court abused its discretion by failing to give the requested instruction, and (2) that it was prejudiced as a result.Jaworowski v. Med. Radiation Consultants (1991), 71 Ohio App.3d 320,327. Beacon Journal has failed to demonstrate either error or prejudice.
The trial court gave a fairly detailed instruction on invasion of privacy, which included the following explanation:
 [I]t is only when telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the Plaintiffs that becomes a substantial burden to his existence that the Plaintiffs' privacy is invaded.
The inclusion of this language should have made it clear to the jury that more than two or three telephone calls were required before liability would attach. Beacon Journal has failed to demonstrate an abuse of discretion by the trial court.
Beacon Journal attempts to demonstrate confusion on the part of the jury by linking the common law invasion of privacy telemarketing claims to the statutory telemarketing claims, suggesting that the jury verdict against it on all telemarketing claims were based on the same three late night phone calls. Although the jury's answers to interrogatories indicate that those three calls formed the basis of Beacon Journal's statutory liability, there was no special interrogatory to indicate the specific conduct that formed the basis of Beacon Journal's common law invasion of privacy liability, where the jury awarded the bulk of its damages. Although the jury found that only three telephone calls made by Beacon Journal violated the federal act because they were made during restricted hours, telephone calls need not be made at a certain time of the day to constitute an invasion of privacy. The partial transcript contains evidence of many more telemarketing calls generated by Beacon Journal to the Irvines during other hours of the day. Thus, Beacon Journal's repeated suggestion that the invasion of privacy claim was based on a mere three phone calls appears to be unfounded. The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING THE BEACON'S MOTIONS FOR DIRECTED VERDICT AND/OR JUDGMENT NOTWITHSTANDING THE VERDICT ON APPELLEES' INVASION OF PRIVACY CLAIMS BASED UPON TELEPHONE HARASSMENT.
 FOURTH ASSIGNMENT OF ERROR THE JURY'S VERDICT ON APPELLEES' INVASION OF PRIVACY CLAIMS BASED UPON TELEPHONE HARASSMENT AND THE JUDGMENT ENTERED THEREON WERE CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 FIFTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING THE BEACON'S MOTIONS FOR DIRECTED VERDICT AND/OR JUDGMENT NOTWITHSTANDING THE VERDICT ON APPELLEES' PUNITIVE DAMAGES CLAIMS.
 SIXTH ASSIGNMENT OF ERROR THE JURY'S VERDICTS IN FAVOR OF APPELLEES ON THEIR PUNITIVE DAMAGES CLAIMS AND THE JUDGMENT ENTERED THEREON WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 NINTH ASSIGNMENT OF ERROR THE JURY'S VERDICT IN FAVOR OF APPELLEES ON THEIR CLAIMS UNDER THE TELEPHONE CONSUMER PROTECTION ACT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ELEVENTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT IN FAVOR OF THE BEACON ON THE ISSUE OF TREBLE DAMAGES.
 TWELFTH ASSIGNMENT OF ERROR THE AWARD OF TREBLE DAMAGES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Through each of these assigned errors, Beacon Journal contends that a particular aspect of the jury's verdict, and consequently the trial court's judgment, is not supported by the evidence presented at trial. Because Beacon Journal has failed to transmit an adequate record of the proceedings below, we cannot review these claimed errors.
Beacon Journal submitted a partial transcript of proceedings that includes only selected excerpts of the testimony presented and discussions that occurred at trial. "Upon appeal of an adverse judgment, it is the duty of the appellant to ensure that the record, or whatever portions thereof are necessary for the determination of the appeal, are filed with the court in which he seeks review." Rose Chevrolet, Inc. v.Adams (1988), 36 Ohio St.3d 17, 19, citing App.R. 9(B) and 10(A); S.Ct.Prac.R. IV(1).
When Beacon Journal filed its precipe to the court reporter, it requested only a partial transcript of proceedings, itemizing portions of the trial that it wanted included. As instructed by appellant, the court reporter transcribed and filed with this court a fifteen-volume partial transcript of proceedings.
Pursuant to App.R. 9(B), the Irvines sought to have additional portions of the transcript included in the record on appeal. In their precipe, they requested the court reporter to transcribe and file with this court the trial testimony of several additional witnesses. The Irvines did not request a complete transcript, but rather enumerated specific additional witnesses whose testimony they wanted included in the record on appeal. The court reporter then filed seven volumes of additional partial transcript. There is no certification that the two partial transcripts make a complete transcript of proceedings, nor is there anything else in the record to even suggest, much less establish, that the complete transcript of proceedings is before this court.[2] The record indicates that dozens of additional witnesses, whose testimony does not appear in either of the partial transcripts, were issued subpoenas to appear at trial. Although it is possible that some, if not all, of those witnesses ultimately were not called to the witness stand, this court has no way of knowing that. For these reasons, this Court can only presume that the transcript of proceedings is not complete.
An appellant is permitted by Appellate Rule 9(B) to rely on a partial transcript. A partial transcript may often be sufficient to demonstrate an affirmative error by the trial court or an error that was confined to a specific portion of the proceedings. A partial transcript is not sufficient to demonstrate these specific errors, however. Where, as here, the appellant claims that no evidence was presented to support a particular finding, the error can be demonstrated only by filing a transcript of all portions of the proceedings during which such evidence may have been presented. See Hartt v. Munobe (1993), 67 Ohio St.3d 3, 7. App.R. 9(B) explicitly provides that "[i]f the appellant intends to urge on appeal that that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the finding or conclusion."
Although, prior to the briefing in this case, Beacon Journal represented to this court that it had presented all the relevant evidence through the partial transcript, we have no way of knowing what occurred during the portions of trial that the parties chose not to put before this court. We will not presume that all the relevant evidence is before us; it is the duty of Beacon Journal to make that demonstration. SeeState v. Steen (1984), 18 Ohio App.3d 68, 69. "[I]n the absence of some demonstration that all evidence relevant to the issue is before us we cannot conclude the judgment was against the manifest weight of the evidence" or otherwise not supported by the evidence. Id.
Because we have no way of knowing what evidence has not been included in the partial transcripts, we can only assume that it may provide additional support for the trial court's decision. "Only if it affirmatively appears from the partial record that the omitted evidence was not relevant to the trial court's decision will its absence be disregarded." Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 409.
Although App.R. 9(B) allows the appellee to transmit additional portions of the record that it deems necessary, a provision that was invoked here, "[an] appellant may not attempt to shift the burden [to complete the record] onto the appellee by filing only portions of the trial record and claiming an insufficiency of evidence on some issue."Hartt v. Munobe, 67 Ohio St.3d at 7. It was not the Irvines' duty to complete the record, nor can their supplementation be construed as a stipulation that all the evidence relevant to these seven assignments of error is now before this court. Any failure on the part of an appellant to secure a portion of the record necessary to its appeal should inure to appellant's disadvantage rather than to the disadvantage of appellee. RoseChevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 19-20.
In the absence of a record of all the relevant evidence before the trial court, it is impossible for this court to review Beacon Journals' third, fourth, fifth, sixth, ninth, eleventh, and twelfth assignments of error, see State Farm Mut. Auto. Ins. Co. v. Peller (1989),63 Ohio App.3d 357, 362, and they are overruled accordingly.
 SEVENTH ASSIGNMENT OF ERROR THE JURY'S VERDICTS IN FAVOR OF APPELLEES ON THEIR CLAIMS FOR PUNITIVE DAMAGES AND THE JUDGMENTS ENTERED THEREON ARE EXCESSIVE AND/OR UNCONSTITUTIONAL UNDER OHIO AND FEDERAL LAW.
For the same reasons relating to the partial transcript detailed above, we cannot review the merits of Beacon Journal's argument that there was insufficient evidence to justify the award of punitive damages. Insofar as Beacon Journal also makes a legal argument, the merits will be reviewed.
Beacon Journal's legal argument challenges the large disparity between the punitive damage award ($100,000) and the compensatory damage award ($250). Beacon Journal contends that the punitive damage award that was 400 times the compensatory damage award was, on its face, impermissible. In support of this argument, Beacon Journal cites Gray v. General MotorsCorp. (1977), 52 Ohio App.2d 348, 359, in which the court found a punitive damage award that was also 400 times the compensatory damage award to be grossly disproportionate and, therefore, impermissible. TheGray court, however, did not find the punitive damages to be excessive solely based on the numbers. The court did not apply a "rigid mathematical formula" but instead looked at the evidence of wrongdoing that was before the jury. The Gray court stressed that punitive damages "must bear some reasonable relation or proportion to actual damages, that is, the nature and extent of the wrong done the plaintiff." Id. The court focused not only on the disparity between the punitive damages and the compensatory damages, but also on the fact that there was no direct evidence that the defendant had acted with actual malice. Id.
 Low compensatory damages and high punitive damages assessed by a jury are not in and of themselves cause to reverse the judgment or to grant a remittitur, since it is the function of the jury to assess the damages and, generally, it is not for the trial or appellate court to substitute its judgment for that of the trier of fact. A large disparity, standing alone, is insufficient to justify a court's interference with the province of the jury.
Wightman v. Consolidated Rail Corp. (1989), 86 Ohio St.3d 431, 438, quoting Villella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 40. A large disparity, in and of itself, does not constitute reversible error because an award of punitive damages is more about a defendant's behavior than the plaintiff's loss. "The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct."Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 651. The actual damage sustained by the plaintiff "has little to do with how a jury might effectively and fairly punish and deter [the defendant's tortious conduct]." Wightman, 86 Ohio St.3d at 439. Factors that might make a large punitive damage award appropriate in a particular case include "[a] substantial harm, a continuing risk, a deterrent effect, and an economically viable [defendant]." Id.
Thus, Beacon Journal's legal argument essentially becomes a factual one. Again, because we do not have all the evidence before us, we cannot determine whether there was sufficient evidence to sustain the jury's punitive damage award. The seventh assignment of error is overruled.
 EIGHTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR DIRECTED VERDICT ON PLAINTIFFS' CLAIMS UNDER THE TELEPHONE CONSUMER PROTECTION ACT.
Beacon Journal contends that the trial court should have granted it a directed verdict on the Irvines' claims under the Telephone Consumer Protection Act. It contends that the undisputed evidence demonstrated that the only calls placed during restricted hours did not qualify as "telephone solicitations" under the act because the calls were placed by an automated dialing machine and no solicitor was even intending to speak to the Irvines. As this court has stressed throughout this opinion, we do not know what the evidence established because we do not have a complete transcript before us. Moreover, even if the evidence supports Beacon Journal's argument, it has failed to convince us that the law does.
Briefly, some of the evidence presented at trial regarding these calls was as follows. Beacon Journal's telemarketing department was equipped with an automatic dialing machine that was programmed to dial certain telephone numbers. During business hours, the autodialer was used to maximize the productivity of Beacon Journal's sales force. Rather than having a sales representative waste time making calls that would not result in a connection with a potential subscriber, the autodialer was used to call multiple telephone numbers at once and connect calls to a sales representative only after they had been answered.
Every weekend, after the regular sales calls were made, Beacon Journal programmed its autodialer dial a list of telephone numbers that Beacon Journal previously had determined were disconnected to determine whether they had been reconnected during the previous week. The autodialer would call the telephone numbers from a preprogrammed disconnect list and record one of two things: (1) a three-toned signal, indicating that the number remained disconnected, or (2) a ring, indicating that the number was currently a working telephone number. Either way, once the autodialer detected one of those two sounds, it recorded the information and dropped the call. Even if the call was answered, the call was not connected to a sales representative because they were not even working at the time.
On two nights during the summer of 1999, because the autodialer had not been working during its usual time for running the disconnect list, Beacon Journal set the machine to run all night. On each of those nights, the autodialer called the Irvines' telephone number a total of three times in the middle of the night.
Beacon Journal does not dispute that its telemarketing department placed the calls and that if the calls qualified as "telephone solicitations," they constituted violations of the Telephone Consumer Protection Act because the calls were placed between the restricted hours of 9:00 p.m. and 8:00 a.m. Their argument is that these calls did not constitute telephone solicitations because no sales representative was on the other end of the line; in fact, no sales representatives were even in the building at the time the calls were placed.
Section 227(a)(3), Title 47, U.S. Code defines the term "telephone solicitation" as "the initiation of a telephone call * * * for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" Beacon essentially contends that a telephone call does not qualify as a "telephone solicitation" unless a sales representative is on the other end of the line, intending to speak to the recipient of the call.
Beacon Journal cites no legal authority to support its argument, nor does it point to specific language of the definition that supports such a construction. There is no language in the statute requiring that a conversation take place or that a sales representative be at the other end of the line. As the Irvines argued in opposition to Beacon Journal's motion for directed verdict, the mere ringing of the phone could constitute a violation.
Section 227(a)(3), Title 47, U.S. Code, as quoted above, refers to the "initiation" of a telephone call, not the completion of one. Expressions of legislative intent further support the trial court's construction of the statute. The Congressional findings following Section 227(a)(3), Title 47, U.S. Code stress the need to control the invasion into the privacy of the homes of consumers by telemarketers. The findings make repeated references to the low-cost technology of "automated or prerecorded telephone calls," suggesting that, if left unchecked, consumers could become overwhelmed by such calls. Legislative concern is directed toward the telephone calls themselves, noting that multimillions of such calls are placed each day, and that each time a telephone line is tied up with a call, it is "seized" for the duration of the call.
The fact that no solicitor was at the other end of the line each time that Beacon Journal called the Irvines in the middle of the night does not demonstrate to this court that no reasonable fact finder could have found that the calls were placed for the purpose of encouraging the sale of a Beacon Journal subscription. Even if Beacon Journal did not intend to make a solicitation at those particular times, Beacon Journal's own evidence was that the purpose of these calls was to detect recently-connected telephone numbers so that it could generate a telemarketing list of numbers to be called by telemarketers in the future. The fact that these particular calls were one step removed from the actual sales pitch does not mean that the purpose of the calls was not to, ultimately, attempt to sell a subscription to the Beacon Journal. This court is not persuaded by Beacon Journal's argument that the calls it generated by the autodialer, with no intention of connecting them to a telephone solicitor, did not qualify as "telephone solicitations." Whether a solicitor is at the other end of the phone or not, when the telephone rings, the intrusion into the home and the seizing of the telephone line is the same. In fact, an argument can be made that when the telephone rings and no one is on the other end, the recipient is even more disturbed and inconvenienced than if a sales person is at the other end of the line.
The eighth assignment of error is overruled.
 TENTH ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN SUBMITTING THE QUESTION OF ENTITLEMENT TO TREBLE DAMAGES UNDER THE TCPA TO THE JURY.
Beacon Journal contends that the trial court erred in allowing the jury to determine whether the Irvines were entitled to treble damages because that issue should have been decided by the trial judge. Section 227(c)(5), Title 47, U.S. Code provides:
 If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.
Because the statute refers to the "court" rather than the jury, Beacon Journal contends that it requires that the treble damage issue be tried to the trial judge, not the jury. Beacon Journal cites no case law interpreting this provision on the issue, nor was this court able to find any.
Although the term "court" might reasonably be interpreted to mean judge and not jury, see Feltner v. Columbia Pictures Television, Inc. (1998),523 U.S. 340, 346, 140 L.Ed.2d 438, 444, it could also be construed to include the judge and jury. See 523 U.S. at 356, 140 L.Ed.2d at 450
(Scalia, J., concurring in judgment). Even if "court" means trial judge, the statute merely fails to afford plaintiffs a statutory "right" to a jury trial. See 523 U.S. at 346, 140 L.Ed.2d at 444. It does not mandate that the treble damage issue be determined by the "court" without the assistance of the jury. Moreover, the United States Supreme Court's decision in Feltner suggests that, even if the Irvines had no statutory right to a jury determination of this issue, they may have had a constitutional one. See 523 U.S. at 355, 140 L.Ed.2d at 450.
The only case cited by Beacon Journal is one construing an entirely different statue, Ohio's Consumer Sales Practices Act, R.C. 1345.09(B). R.C. 1345.09 has no similar language referring to the "court," nor is the trebling of damages conditioned on a knowing or willful violation of the statute; the only similarity is the trebling of damages. Although courts have held that the trial judge, not the jury, is better equipped to determine a plaintiff's entitlement to treble damages under R.C. 1345.09, it is because the determination is a legal one, not a factual one, and legal determinations are within the province of the trial judge. See,e.g., Inserra v. J.E.M. Building Corp. (Nov. 22, 2000), Medina App. No. 2973-M, unreported, at 17. The determination of a plaintiff's entitlement to treble damages under the Telephone Consumer Protection Act, on the other hand, requires a mere factual finding, whether the defendant's violation was willful and knowing. See Section 227(c)(5), Title 47, U.S. Code. Thus, the reasoning expressed in Inserra does not apply.
Consequently, Beacon Journal has failed to convince us that the trial court erred by allowing the jury to determine whether the Irvines were entitled to treble damages. The tenth assignment of error is overruled.
 THIRTEENTH ASSIGNMENT OF ERROR THE AWARD OF TREBLE DAMAGES MUST BE VACATED AND/OR REDUCED BECAUSE APPELLEES ARE NOT ENTITLED TO RECOVER DAMAGES IN EXCESS OF THREE TIMES THE AMOUNT AVAILABLE UNDER THE STATUTE.
For Beacon Journal's violations of the Telephone Consumer Protection Act, the jury found that the Irvines were entitled to total statutory damages of $1,500 plus treble damages of $4,500. The trial court then entered judgment that awarded the Irvines both the statutory damages and the treble damages. Beacon Journal contends that, by the explicit terms of the Telephone Consumer Protection Act, and legal principles governing the trebling of damages generally, the trial court had authority to award the trebled damages in lieu of the statutory damages, but not in addition to them. We agree.
As quoted above, Section 227(c)(5), Title 47, U.S. Code provides:
 If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.
The explicit terms of the statute authorize the trial court to increase the statutory damages to an amount "equal to not more than 3 times" the statutory damages. Nothing authorizes the trial court to award treble damages in addition to the statutory damage award. The total damages cannot exceed the trebled amount.
The concept of trebled damages generally has always been understood to authorize the trebling of damages as a total damage figure, not one to be added to the statutory or compensatory damages. See, e.g., Green v.U.S.A. Energy Consultants (Sept. 18, 1986), Cuyahoga App. Nos. 50942 and 51149, unreported, 1986 Ohio App. LEXIS 8309. The trial court erred by awarding treble damages in addition to the statutory damages, rather than in lieu of them. The thirteenth assignment of error is sustained.
 FOURTEENTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN ENTERTAINING APPELLEE'S MOTION FOR ATTORNEY FEES, IN ADOPTING THE MAGISTRATE'S FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING ATTORNEY FEES, AND IN ENTERING JUDGMENT AWARDING ATTORNEY FEES IN FAVOR OF APPELLEES.
Beacon Journal contends that the trial court erred in awarding attorney fees to the Irvines because the jury, not the court, should have made the determination of whether the Irvines were entitled to attorney fees. We need not address the propriety of the attorney fee award because Beacon Journal has failed to preserve this issue for review.
First, as the trial court noted in a post-trial order, the trial court had informed the parties that it would address the issue of attorney fees after trial and neither party raised any objection. Moreover, the issue of attorney fees was tried to a magistrate who decided that the Irvines should be awarded $60,485.25 in attorney fees. Although Beacon Journal raised several objections to the magistrate's decision, it did not object to the fact that the attorney fee issue was tried to the magistrate and not a jury. Civ.R. 53(E)(3)(b) expressly states that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Because Beacon Journal did not raise an objection on this basis, we are precluded from addressing the merits of this assignment of error and it is overruled accordingly. See In theMatter of Estate of Kordiac (Oct. 20, 1999), Summit App. No. 19192, unreported, at 3. The fourteenth assignment of error is overruled.
 CROSS ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN RELIEVING ITS GARNISHMENT ORDER AND IN NOT REQUIRING THE APPELLANT TO POST A BOND IN THE AMOUNT [OF] THE JURY VERDICT WHILE THE CASE IS PENDING IN [THE] APPELLATE COURT.
The Irvines contend that the trial court erred: (1) by vacating its prior order of garnishment and (2) by staying the execution of the judgment without requiring it to post a supercedeas bond.
Although no order of garnishment appears in the record, the trial court indicated through a subsequent journal entry that it was vacating its prior order of garnishment. The Irvines contend that the trial court has no authority to vacate an order of garnishment, but they cite no authority for that proposition. We are not inclined to make the Irvines' legal argument for them. Collier v. Dorcik (Nov. 29, 2000), Medina App. No. 3009-M, unreported, at 13. Moreover, as Beacon Journal notes, the trial court ordered garnishment before the judgment was final so its act of vacating that order appears to be appropriate. See State ex rel.Electrolert, Inc. v. Lindeman (1994), 99 Ohio App.3d 154, 157-158.
The Irvines next contend, relying on Civ.R. 62(B), that the trial court had no authority to stay the execution of the judgment without ordering Beacon Journal to pay a supersedeas bond. Civ.R. 62(B) provides:
 When an appeal is taken the appellant may obtain a stay of execution of a judgment or any proceedings to enforce a judgment by giving an adequate supersedeas bond. * * * The stay is effective when the supersedeas bond is approved by the court.
The Irvines cite no authority that construes Civ.R. 62(B) as mandating a bond before a stay can be granted. An "adequate supersedeas bond" could reasonably be construed to mean no bond at all, if the trial court felt that none was necessary, as in this case. See Lomas Nettleton Co. v.Warren (June 29, 1990), Geauga App. No. 89-G-1519, unreported, 1990 Ohio App. LEXIS 2720, at *3 (construing "sufficient sureties" language of R.C.2505.09 to encompass no sureties in certain cases).[3] This court has held that "under appropriate circumstances, the trial court may exercise its discretion and stay the execution of judgment without requiring the appellant to post a supersedeas bond." Whitlatch Co. v. Stern (Aug. 19, 1992), Summit App. No. 15345, unreported, at 21; see, also, Lomas Nettleton Co. v. Warren, 1990 Ohio App. LEXIS 2720, at *5 (holding that "[t]he posting of a supersedeas bond is not mandatory to stay an execution in all cases[.]").
The trial court gave a reasonable explanation for its decision that an "adequate" bond to secure the Irvines' interests in this case was no bond at all. In its journal entry granting the stay, the trial court indicated its finding "that the Plaintiffs are adequately secured by the Defendant's solvency and well-established ties to Akron, Ohio and that, therefore, the Defendants are not required to post a bond at this time." This court finds no abuse of discretion by the trial court. The cross-assignment of error is overruled.
 Summary
Beacon Journal's thirteenth assignment of error is sustained. Its remaining assignments of error are overruled. The Irvines' cross-assignment of error is overruled. The judgment is reversed only insofar as the trial court awarded treble damages in addition to statutory damages under the Telephone Consumer Protection Act. The cause is remanded for correction of that aspect of the judgment only.
Judgment affirmed in part, reversed in part, and the cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
SLABY, J., CARR, J. CONCUR.
[1] The original forms completed by the jury are not part of the record. This court's review therefore is limited to what is apparent from transcribed discussions between the trial judge and counsel. Beacon Journal also asserts an argument based on a fact that does not appear in the record. Consequently, that argument will not be addressed.
[2] Although the court reporter should, pursuant to App.R. 9(B), "certify the transcript * * * and state whether it is a complete or partial transcript and, if partial, indicate the parts included and the parts excluded[,]" no such certification appears in the record.
[3] The Irvines do not base their argument on R.C. 2505.09.