COLEMAN, JUSTICE,
FOR THE-COURT:
¶ 1. In July 2004, an Oktibbeha County jury found Tyler Edmonds guilty of the murder of Joey Fulgham, who was his half-sister’s husband. In May 2007,. the Mississippi Supreme Court reversed Ed-monds’s conviction and remanded the case to the Oktibbeha County Circuit Court for a new trial due to evidentiary errors. At his new trial in 2008, a jury found Ed-monds not guilty,
¶ 2. The present appeal stems, from Ed-monds’s suit against the State under the Compensation to Victims of Wrongful Conviction and Imprisonment statutes codified in Mississippi Code Sections 11-44-1 to 11-44-15, which permit a person wrongfully convieted and imprisoned to recover $50,000 for every year, of -wrongful incarceration. The circuit court concluded that Edmonds was not entitled, to compensation because he made a false confession to police officers regarding his involvement with the murder, which equated to a fabrication of evidence. Edmonds appeals, and we reverse the judgment and remand the case to the circuit court.
FACTS AND PROCEDURAL HISTORY
¶ 3. In 2003, Edmonds confessed that he, with the help of his half-sister Kristi Fulg-ham, shot Joey Fulgham. At the time, Joey was married to Kristi. Initially, Ed-monds and his mother voluntarily went to the police station, and Edmonds claimed that he did not know anything about the murder] However, Edmonds’s mother was removed from the room, Edmonds was informed that Kristi had implicated him in the murder, and Kristi, who was already at the police station, was brought into the room with Edmonds. She held Edmonds’s hand and told him that she had told the truth and that' he should tell the truth too. After his brief meeting with- Kristi, Ed-monds gave a confession that he and Kristi had killed Joey. Several days later, Ed-monds recanted his confession and stated that 'Kristi had acted alone in shooting Joey.
¶4. Following trial, the jury convicted Edmonds of murder, and the court sentenced him to life in the custody of the Mississippi Department of Corrections. Edmonds appealed, and the Court of Appeals affirmed his sentence and conviction. Edmonds v. State, 955 So.2d 864, 900 (¶¶ 120-1) (Miss. Ct. App. 2006). The Supreme Court granted Edmonds’s petition for writ of certiorari review. Edmonds v. State, 955 So.2d 787, 790 (¶ 2) (Miss. 2007). The Court concluded that Edmonds did not receive a fair trial for a variety of reasons, so the Court reversed the circuit court’s and Court of Appeals’ judgments and remanded the case for a new trial. Id. at 798-9 (¶¶ 29-33).
*289 ¶ 5. Edmonds’s second trial resulted in a not-guilty verdict. Upon, the return of the not-guilty verdict, Edmonds filed the present action seeking compensation pursuant to Section 11-44-1 for the years he spent in custody. Edmonds’s bench trial resulted in a determination by the circuit court that Edmonds’s confession was fabricated evidence; thus, he could not recover under the Compensation to Victims of Wrongful Conviction and Imprisonment statutes. Edmonds appeals and raises the following issues:
I. Whether the circuit court erred- in -concluding that Edmonds fabricated evidence.
II. Whether the circuit court’s failure - to give Edmonds a fair trial at his first criminal trial was a superseding cause of Edmonds’s conviction, such that the false confession was not a legal cause of his conviction.
III. Whether the -circuit court should have granted Edmonds’s request to have a jury trial.
STANDARD OF REVIEW
¶ 6. As has been explained, the present appeal stems from the circuit court’s-judgment following a bench trial. It is well-settled that the Court defers to the factual findings and determinations of a trial judge sitting as the finder of fact at a bench trial; therefore, we will not disturb such findings if they are supported by substantial evidence and the trial court did not abuse its discretion, was not manifestly wrong, was not clearly erroneous, and did not apply an erroneous. legal standard. Covington County v. G.W., 767 So.2d 187, 189 (¶ 4) (Miss. 2000) (quoting Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc., 716 So.2d 200, 204 (¶ 15) (Miss. 1998)). As is customary, the Court reviews questions of law, including statutory interpretation, de novo. Tellus Operating Group, LLC v. Texas Petroleum Inv. Co., 105 So.3d 274, 277-8 (¶ 9) (Miss. 2012) (quoting Laurel Ford Lincoln-Mercury, Inc. v. Blakeney, 81 So.3d 1123, 1125 (¶ 5) (Miss. 2012)).
analysis
¶7. For purposes of our analysis, the first two issues raised by Edmonds can be consolidated into one issue: the appropriate interpretation and application of Section 11 — 44—7(l)(c), which provides that a plaintiff under the Compensation to Victims of Wrongful Conviction and Imprisonment Act (“Wrongful Conviction and Im-prisonmént Act”) must show he did not “fabricate evidence to bring about his conviction.” See Miss. Code Ann. § 11-48-7(1)(c) (Rev. 2012). The second primary issue before -us is whether Edmonds’s request for a jury trial should have been granted. On both issues, we hold in favor of Edmonds.
I. Section 11 — 44—7(l)(c) includes an element of intent to bring about one’s conviction when fabricating evidence and therefore, an issue of material fact remains as to Ed-monds’s intent.
¶ 8. According to Section 11-44-1, the reason for the passage of the Wrongful Conviction and Imprisonment statutes was to provide monetary compensation to “innocent persons who have been wrongly convicted of felony crimes and subsequently imprisoned” because they “have been uniquely victimized, have distinct problems reentering society, and should be compensated.” Miss. Code Ann. § 11-44-1 (Rev. 2012). Compensation is provided if a claimant proves by a preponderance of the evidence that “[h]e was convicted of one or more felonies and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence; and ... his *290 judgment of conviction was reversed or vacated and ... [i]f a new trial was ordered, he was found not guilty at the new trial Miss. Code Ann. § 11-44-7(l)(a)(ii)(2) (Rev. 2012). Further, the claimant must prove that “[h]e did not commit the felony or felonies for which he was sentenced and which are the grounds for the complaint, or the acts or omissions for which he was sentenced did not constitute a felony.” Miss. Code Ann. § 11-44-7(l)(b). Finally, and most relevant to the present case, the claimant must prove that “[h]e did not commit or suborn perjury, or fabricate evidence to bring about his conviction.” Miss. Code Ann. § 11 — 44—7(l)(c).
¶ 9. The crux of Edmonds’s position is that the circuit court erred in finding that his false confession prohibits him from recovery pursuant to Section 11 — 44—7(l)(c). In support of his position, Edmonds outlines several facts that led to his confession, which include: his young age, his desire to help his half-sister avoid the death penalty, and the police allowing his half-sister to speak to him without his mother present. Essentially, Edmonds’s argument is two-fold: (1) the statute requires an element of intent to fabricate evidence, and (2) an issue of material fact exists as to the nature of Edmond’s intent. The State, on the other hand, contends that the “to bring about” language is merely causative and lacks any connotation of intent. We agree with Edmonds on both points.
¶ 10. First, the issue hinges upon the Court’s interpretation of the following language within the statute: “[The Claimant] did not ... fabricate evidence to bring about his conviction.” Miss. Code Ann. § ll-44-7(l)(c). “When interpreting a statute that is not ambiguous, this Court will apply the plain meaning of the statute.” Pitalo v. GPCH-GP, Inc., 933 So.2d 927, 929 (¶ 5) (Miss. 2006). To determine the plain meaning, “we must look at the words of the statute.” Adams v. Baptist Mem’l Hosp.-DeSoto, Inc., 965 So.2d 652, 656 (¶ 21) (Miss. 2007).
¶ 11. The word “fabricate” has no element of intent indicating ultimate purpose or motive for the fabrication embedded within its plain meaning; however, the phrase “to bring about” does. The word “to” carries many definitions, one of which is “used for expressing aim, purpose, or intention.” To, Random House Webster’s Unabridged Dictionary 1989 (2d ed. 2001). The phrase “to bring about” reflects the function of the word “to” as expressing “aim, purpose, or intention,” as in “[The Claimant] did not ... fabricate evidence [with the “aim, purpose, or intention” of bringing] about his conviction.” As it means “[something, especially] willful desire, that leads one to act,” Motive, Black’s Law Dictionary (10th ed. 2014), the word “motive” also would be appropriate to describe the requirement at issue. In more technical terms, the phrase “to bring about” produces an adverbial infinitive that modifies and directs the verb “fabricate.” Adverbial infinitives frequently are employed to express intent or motive behind a particular action, e.g., “I went to the store to buy groceries” (i.e., I went to the store with intent, and that intent was to buy groceries); “He ran for office to bring about change” (i.e., he ran for office with intent, and that intent was to bring about change). Turning the statute into a question simplifies the technical understanding: Why did the claimant fabricate evidence? To bring about his conviction. In other words, the claimant fabricated evidence in order to bring about his conviction, which denotes intention, purpose, or- motive. Moreover, no other understanding of the word “to” fits within the context of the phrase “to bring about,” and, therefore, a *291 plain reading of the statute engenders an element of intent under subsection (l)(c).
¶ 12. In his dissent, Justice Cham-berlin eschews the analysis of the statutory language as unnecessary. Our law requires that we analyze the “words of the statute.” Adams, 965 So.2d at 656 (¶ 21). “The function of the Court is not to decide what a statute should provide, but to determine what it does provide.” Lawson v. Honeywell Int’l, Inc., 75 So.3d 1024, 1027 (¶ 7) (Miss. 2011). The simple principle that Justice Chamberlin would announce, to the effect that, “If you confess.a crime, and that confession is not coerced or otherwise induced by law enforcement or some state actor, then you cannot recover under the statute,” may very well be better policy.- However, the statute wholly excludes any mention of state actors' or law enforcement.
¶ 13. Presiding Justice Randolph takes the position that our interpretation is absurd because he “can fathom no one who would falsely confess to a crime with the aim, intent, or purpose of being imprisoned.” We decline to attempt to divine the full range of motivations human beings might have to give false confessions to or other false evidence indicating the commission of crimes, but we disagree that our interpretation is absurd. Certainly, if people actually commit crimes motivated by a desire to be separate from their spouses, for example, then a person might fabricate evidence to be convicted of a crime he or she did not commit for the same or a similar reason. Travis M. Andrews, “Rather be in jail": 70-year-old rdan robs bank to get arrested and away from wife, police say. The Washington Post (September 8, 2016). The unpredictable motivations of our fellow humans aside, our interpretation of the statute allows the hypothetical, wrongly convicted person who falsified a confession under coercion the opportunity to prove that he did not fabricate the evidence of the confession- to bring about his conviction but, rather, because he was coerced. If the statutory language requires causation in fact only, as urged by Justice Beam, then even coerced false confessions would be fatal to efforts to recover.
¶ 14. We further suggest that not all persons making false confessions would recover simply by claiming they had a motive other than getting themselves convicted. For a hypothetical example, if a father were to plead guilty to a crime he did not commit in order to keep his guilty child from prison, then getting convicted is the intent of the father. If such were the evidence, he would not have proven that he did not fabricate evidence to bring about his conviction, because bringing about his conviction was a necessary component of also misguidedly protecting his child. By contrast, Edmonds’s testimony below was that he had no appreciation for the possibility that he would go to jail. For the above reasons, we. are unpersuaded that our interpretation of the statute is absurd.
¶ 15. In response to a concern raised by Justice Beam’s dissent, we pause to make it clear that we agree that, in addition to the aim, intent, and purpose requirement, Section ll-44-7(l)(c) requires that the false evidence cause the conviction. It is not thé Court’s intent to ignore that the statute plainly requires that the falsified evidence bring about the conviction. However, as the disputé between the State and Edmonds is whether Section ll~44-7(l)(c) contains a requirement that the fabrication be motivated by or intended to bring about the conviction, we address what, if anything, the language has to say on the contested issue rather than an issue as to which, as Justice Beam points out,’ all parties agree. We isolate nothing when we consider ‘the Legislature’s purpose in choosing the phrase “to *292 bring about” instead of any other phrase from a range of alternative verbiage including, e.g., “that brings about.” Rather, we are striving, as we must, -to give effect to the entire statute. DePriest v. Barber, 798 So.2d 456, 458 (¶ 5) (Miss. 2001) (“The primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein”). Had the Legislature intended to preclude recovery for claimants who fabricated evidence, that caused their convictions no matter the reason it was fabricated, then it easily could have chosen different language. For example, the Legislature could have substituted the words “which brings” for the phrase “to bring.” However, the Legislature did- not so choose and we are constrained to consider the words it did employ. “The duty of this Court is to interpret the statutes as written.”' Scaggs v. GPCH-GP, Inc., 931 So.2d 1274, 1276 (¶ 10) (Miss. 2006).
¶ 16. Since we hold Section 11-44-7(l)(c) does provide for an element of intent, purpose, or motive, for fabricating evidence, an issue of material- fact still exists as to whether Edmonds confessed with the intent,., purpose, or motive of bringing about his own conviction.
II. Edmonds produced evidence that he confessed with the intent to help his sister and with no intention to be incarcerated.
 ¶ 17. In dissent, Justice Beam takes the position that no issue of material fact exists as to Edmonds’s motive for bringing about his conviction. The. record demonstrates otherwise. At the trial of the instant matter, counsel for Edmonds asked him several questions regarding his feelings for. his sister in order to establish evidence of motivations other than getting himself- convicted of the crime. Edmonds proffered, his testimony to the effect that, in confessing, he intended to “help and protect” his sister. He explicitly denied that he had made the confession with the intention of going to prison. During the trial, the following exchange took place during the direct examination of Edmonds:
Q. Tyler, what was your motive, your goal, your desire, in making the first statement? .What were you trying to do?
A. To protect and help my sister.
Q. Now, in your 13-year-old mind, did that seem like what you were doing?
A. At the time, yes.
Q. You’re a grown man now?
A. Yes.
Q. How does it seem to you, with the . benefit of the maturation as a result of age, experience, and simply enough, just the development of your brain?
A Stupid.
Q. Was your purpose at any time in making your first statement to go to prison?
A. Absolutely not.
Q. To get sent to jail?
A. Absolutely not.
In addition to the above-quoted testimony, Edmonds offered into evidence a handwritten letter from his sister, in which his sister entreated him to stand firm on his confession. Indeed, the trial judge noted and even, at least tacitly, found the evidence of Edmonds’s intent credible when he wrote in his judgment that Edmonds’s confession “was motivated by an attempt to shift at least part of the blame to himself in the mistaken belief that it would help his half-sister.”
¶ 18. To the extent that Justice Beam argues that there is no material issue of fact as to the whether Edmonds’s false *293 -confession caused his conviction, we need not respond. It is not pertinent to the issue of whether proof exists that, if taken in a .light most favorable to Edmonds, shows that his false confession was motivated by some other goal than being convicted. As shown above, Edmonds has produced such evidence.
IV. When a statute is silent regarding a plaintiffs option to a jury trial, the right shall remain available to the litigant.
¶ 19. Edmonds argues that he was entitled to the jury trial he requested as opposed to the bench trial he received. Article 3, Section 31 of the Mississippi Constitution provides that “[t]he right of trial by,jury shall remain inviolate .., (Emphasis added.) The term “remain” has been interpreted as specifically grafting the right of trial by jury onto common-law causes of action. Isom v. Mississippi Cent. R. Co., 36 Miss. 300, 308 (Miss. 1858) (“The peculiar phraseology of [Section 31] will naturally suggest the idea, that it has reference to an existing state of the law securing this right, at the time of its adoption. It is to ‘remain inviolate.’ ”). In reference to the Seventh Amendment’s right to a jury trial, the United States Supreme Court has “understood ‘suits at common law’ to refer ‘not merely [to] suits, which the common law recognized among its old and settled .proceedings, but [to] , suits in ivhich legal rights were to be ascertained and determined, in contradistinction, to those where equitable rights alone were recognized .... ” Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 348, 118 S.Ct. 1279, 1284, 140 L.Ed. 2d 438 (1998) (emphasis added).[1]
¶20. In reliance upon the above-referenced rules, the State argues the cause of action established under the Wrongful. Conviction and Imprisonment statutes is not based in common law. The State is correct: .“At common law, suits' ... against the State were not available at all, due to sovereign .immunity.” Wells by Wells v. Panola Cty. Bd. of Educ., 645 So.2d 883, 898 (Miss. 1994). However, that Edmonds’s claim is created -by statute rather than, the common law does not alone determine whether he has a right to a jury trial. The Wrongful Conviction and Imprisonment Act is completely silent as to whether a jury trial may be had, and pursuant to the following reasoning, we hold that — in a case where the statutes creating a cause of action against the State are silent as to whether the plaintiff has a right to a jury trial — a jury trial may be had.
¶21. Attempting to infer legislative intent, the State draws the Court’s attention to Section 11-44-7(4), which says “[a] claimant may choose to pursue a claim under this chapter in lieu of pursuing a claim against the State of Mississippi or a political subdivision thereof under the Mississippi Tort Claims Act, Section 11-46-1 et seq., Mississippi Code of 1972.” Using the quoted language, the State contends the Wrongful Conviction and Imprisonment Act acts as an alternative to the Mississippi Tort Claims Act,‘and, therefore, the Legislature intended for trials under the statute to be conducted in the same manner as trials under the Tort Claims Act. The text yields the opposite conclusion. The Tort Claims Act specifically bars jury trials: “The judge of the appropriate court shall hear and deter *294 mine, without a jury, any suit filed under the provisions of this chapter.” Miss. Code Ann. § 11-46-13(1) (Rev. 2012) (emphasis added). No comparable language is found in the Wrongful Conviction and Imprisonment Act, which, according to the above-quoted language, may be used in lieu, or instead, of the Tort Claims Act. City of Natchez, Miss. v. Sullivan, 612 So.2d 1087, 1089 (Miss. 1992) (“[T]he omission of language from a similar provision on a similar subject indicates that the legislature had a different intent in enacting the provisions, which it manifested by the omission of the language.”).
¶ 22. We return, then, to the question at hand, which is whether a plaintiff'enjoys the right to a trial by jury in the context of a statutorily created cause of action against the sovereign when the pertinent statutes are silent on the issue.
¶ 23. In Riverboat Corporation of Mississippi v. Harrison County Board of Supervisors, 198 So.3d 289, 291 (¶ 7) (Miss. 2016), the Court considered “whether there is a right to a jury trial in an appeal of a county’s ad valorem tax assessment.” The issue in Riverboat was the same as the issue Edmonds presents today: “The statute authorizing this suit ... is silent regarding the right to a jury trial.” Id. Edmonds’s appeal is distinguishable in that tax-assessment cases have had a “longstanding use of jury trials,” whereas cases against the Sovereign do not have a similar history. Id. at 294 (¶ 14). Nevertheless, we reiterated in Riverboat that “[tjhis Court, on prior occasion and well before the adoption of our 1890 Constitution, addressed the right to trial by jury when statutes giving rise to actions were silent as to that right.” Id. at 291 (¶ 8). We have “emphatically declared the right to a jury trial ‘is unquestionably the parties’ right, and the court will not be departing from its well established rules of practice in granting it, though the statute may be silent on the subject.’ ” Id. (second emphasis added).
¶ 24. Riverboat reflects that, when faced with a silent statute, our historic and customary proclivity has been to recognize the right to a jury trial. We do so again today. Our ancestors viewed a jury trial right as so fundamental that they included it in both our federal and state constitutions. Therefore, we hold that, in the context of a statutory claim against the Sovereign, whose provisions are silent as to whether or not the action receives a jury or not, the plaintiff continues to enjoy the right to a jury trial. To the extent that the Court of Appeals held otherwise in Hymes v. State, 121 So.3d 938 (Miss. Ct. App. 2013), which also involved a claim under the Compensation to Victims of Wrongful Conviction and Imprisonment statutes, we today overrule it.
CONCLUSION
¶ 25. Pursuant to the foregoing reasoning, we reverse the judgment of the Oktib-beha County Circuit Court and remand the case for further proceedings consistent with the instant opinion.
¶ 26. REVERSED AND REMANDED.
WALLER, C.J., DICKINSON, P.J., KITCHENS AND KING, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J.; BEAM AND CHAMBERLIN, JJ., JOIN IN PART. RANDOLPH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BEAM, J.; MAXWELL AND CHAMBERLIN, JJ., JOIN IN PART. BEAM, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, P.J., MAXWELL AND *295 CHAMBERLIN, JJ. CHAMBERLIN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., MAXWELL AND BEAM, JJ.

. While the language from Feltner is instructive, the right to a trial by jury under the Seventh Amendment does not extend to the States through the Fourteenth Amendment. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 431, 116 S.Ct. 2211, 2221, 135 L.Ed. 2d 659 (1996).